**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY


JAMES ELMER,                    :
                                :   Civil Action No. 05-4755 (RBK)
            Petitioner,         :
                                :
      v.                        :   OPINION
                                :
                                :
JOHN NASH, Warden,              :
                                :
            Respondent.         :
```

**APPEARANCES:**

```
James Elmer, Pro Se              Counsel for Respondent
#10112-002                       Dorothy J. Donnelly
F.C.I. Fort Dix                  Assistant U.S. Attorney
P.O. Box 2000                    402 East State Street
Fort Dix, NJ 08640               Room 430
                                 Trenton, NJ 08608
```

**KUGLER**, District Judge

Petitioner James Elmer, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28

U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding. The sole respondent is Warden John Nash.

For the reasons set forth below, the Petition will be denied.

## BACKGROUND

Petitioner was convicted in the United States District Court for the Middle District of Alabama after pleading guilty to federal drug charges. He was sentenced to a term of imprisonment of 252 months. He currently is confined at the Federal Correctional Institution at Fort Dix, New Jersey, pursuant to that sentence.

On October 4, 2004, Petitioner was found guilty by the Unit Disciplinary Committee ("UDC") of failing to obey an order and interfering with a staff member. As a result of the findings, Petitioner was sanctioned to loss of telephone and commissary privileges for 30 days, to begin the next day, October 5, 2004. Petitioner states that he was never informed of the start date of the sanctions. Respondent argues that Petitioner was notified at the conclusion of his hearing. They evidence this with a memo

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
> (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
> (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

from the UDC Chairperson dated October 22, 2004, which states: "[Petitioner] was advised during notification of the sanction when the restriction would begin.  He was advised the sanction would begin the next day due to the time the UDC hearing was heard, to ensure the other departments were notified." (Affidavit of Allia Lewis, Exhibit B).

On October 17, 2004, before the above-referenced memo was written, Petitioner was charged with attempting to use the phone while on restriction.  The incident occurred on October 12, approximately 8 days after the UDC hearing and sanctions restricting his telephone use were imposed.  The charges were referred to the UDC, which referred them to the Disciplinary Hearing Officer ("DHO") due to the seriousness of the accusations.  The UDC suggested to the DHO that Petitioner be sanctioned with 365 days telephone restriction and 13 days loss of good conduct time.  Petitioner told the UDC that he did not know that he was on restriction when he was charged with the offense.

The DHO conducted a hearing on October 25, 2004.  Petitioner again asserted that he did not know when the restriction had begun, but admitted using the telephone.  He stated that he was authorized to use the telephone because his personal identification number was active, and he was able to access the inmate telephone system.

The DHO considered Petitioner's statement, the October 22, 2004 memo, Petitioner's disciplinary record, and the incident report, and found Petitioner guilty of the offense.  Petitioner was sanctioned to loss of 30 days earned good conduct time credit, forfeiture of non-vested good conduct time, disciplinary segregation, and 365 days loss of telephone privileges.

Petitioner's appeals to the Regional Director of the Bureau of Prisons ("BOP") and Central Office of the BOP were unsuccessful.

Petitioner filed the instant Petition for a Writ of Habeas Corpus on October 3, 2005.  Respondent's Answer was filed on December 14, 2005.  Petitioner argues in the instant Petition that he was never informed of the "details of his sanctions" at the UDC hearing where he was first placed on telephone restriction, and that the BOP did not comply with its Program Statement 5270.07 concerning delivery of the UDC decision.  See 28 C.F.R. § 541.15(f)(3).  Petitioner states that he did not receive a copy of the UDC decision until December 22, 2004, three months after the hearing.

Petitioner also argues in the instant Petition that the October 22, 2004 memo asserting that Petitioner was given notice of his sanctions and the starting date of his telephone restriction was untrustworthy, since it was written by a UDC member for purposes of curing a defective UDC action, and because

4

the memo did not explain why the details of the 30-day phone restriction had not been documented in the original decision. Petitioner further points out that the memo was written 18 days after the original hearing and it was tailored to conform to the DHO's request. Petitioner argues that the DHO's decision to allow admission of this memo into evidence violated his right to an impartial hearing.

## DISCUSSION

### A. Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997). See also Wilkinson v. Dotson, 125 S. Ct. 1242 (2005). As Petitioner challenges a disciplinary proceeding that resulted in the loss of good time credits, this Court properly may exercise jurisdiction over that claim.

To the extent a prisoner challenges his conditions of confinement, however, such claims must be raised by way of a civil rights action. See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002). Where a favorable outcome necessarily would imply the invalidity of the length of a prisoner's sentence, such claims do

not accrue until the sanction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  See Heck v. Humphrey, 512 U.S. 477 (1994).  Thus, in this habeas action, this Court can award no relief related to those sanctions that do not affect the length of Petitioner's sentence.

**B.     Standard of Review**

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);

United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C.    Petitioner's Claims**

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a

sanction,[2] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinders as to the evidence relied on and the

---

[2] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

8

reasons for the disciplinary action.  See Wolff, 418 U.S. at 564-66.  Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings.  See id. at 569-70.  Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member.  See id. at 570.[3]

Finally, due process requires that findings of a prison disciplinary official that result in the loss of good time credits must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

---

[3] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq.  See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

> Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted).

Here, Petitioner received advance notice of the charges, was offered a staff representative, and was permitted to make a statement in his defense.  Petitioner alleges, however, that he was not provided a statement of the reasons for the UDC's decision which originally placed him on telephone restriction in a timely manner, in violation of BOP regulations.  Nonetheless, there was evidence in the record (the October 22 memo) that Petitioner was aware of the telephone restriction sanction and the date on which it was to begin.  The DHO, therefore, had "some evidence" that Petitioner knew that he was on restriction at the time he made the call resulting in the second disciplinary infraction and loss of good time credit.  The DHO decided what weight to give the memo, and Petitioner's arguments that the memo was not trustworthy should have been raised at the DHO hearing and to the BOP on appeal, rather than in this habeas petition.

Further, even if BOP did violate its own regulation regarding delivery of the UDC's findings placing him on telephone restriction, Petitioner was not deprived of his constitutional rights because the DHO in the second disciplinary hearing based his decision finding Petitioner guilty on the evidence presented at the hearing, and considered Petitioner's defense.  Further,

despite the alleged violation of the regulation, the DHO found that Petitioner was noticed of the original telephone restriction as evidenced by the October 22 memo.  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1421-23 (M.D. Pa. 1994)(stating that, "because of the exigencies of the prison disciplinary context, this court is not persuaded that a disciplinary sanction must automatically be vacated and remanded because a particular regulation was violated.  Rather, at least in situations where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated."); see also Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989); Rogers v. Okin, 738 F.2d 1, 8 (1st Cir. 1984).

    Petitioner's argument that his sanction was unjustifiably harsh is not supported by the record.  The DHO gave his reasons for the year-long telephone restriction, and the sanction was found to be in accordance with BOP policy by the Regional and Central Offices of the BOP.

    Therefore, the Court finds Petitioner's claims to be without merit.  Petitioner was afforded his due process rights, as he was given written notice of the charges against him, an opportunity to respond to those charges, and a hearing.  While Petitioner disagrees with the findings of the DHO, especially the DHO's discretionary decision to afford the October 22 memo some weight, the Court finds no constitutional violation.

11

**CONCLUSION**

For the reasons set forth above, the Petition will be denied.  An appropriate Order follows.


                                            S/Robert B. Kugler
                                            ROBERT B. KUGLER
                                            United States District Judge

Dated: January 19, 2006